UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN  DIVISION
No. 5:11-CV-388-BR

ALVIN L. BESS,                          )
                                        )
                Plaintiff,              )
v.                                      )                    ORDER
                                        )
COUNTY OF CUMBERLAND, NORTH   )
CAROLINA,                               )
                                        )
                Defendant.              )

        This matter is before the court on the 25 August 2011 motion to dismiss filed by

defendant Cumberland County ("County").  The motion has been fully briefed and is ripe for

disposition.

## I.  BACKGROUND

        Plaintiff Alvin L. Bess ("plaintiff") was employed by the County as a transportation

planner and as a Fayetteville Area Metropolitan Planning Organization ("FAMPO") principal

transit planner from 3 March 2008 until his termination on 12 March 2010.  (Compl., DE # 4, at

12, 18;[1] Def.'s Mem. Supp. Mot. Dismiss, DE # 12, at 2-3.)  Plaintiff filed two charges of

employment discrimination with the Equal Employment Opportunity Commission ("EEOC") on

26 January 2010 and 19 May 2010.  (Compl., DE # 4, at 5, 8, 14, 21.)  Plaintiff subsequently

filed two separate lawsuits relating to these charges of discrimination.  Plaintiff's first action,

No. 5:10-CV-453-BR, which the court will discuss further in Section II.F., infra, was filed in this

_____

        [1] Plaintiff's complaint in this action consists of two documents, a fill-in-the-blank typewritten complaint
that the court makes available for use by _pro se_ litigants, and a separate complaint that plaintiff composed entirely on
his own.  These two documents were filed as a single entry on the docket.  (See DE # 4.)  Therefore, in order to
avoid confusion when citing to the complaint, the court will not refer to the page numbers used by plaintiff in the
separate documents but will instead refer to the page numbers that were electronically generated by the Clerk's
office when the documents were filed together as a single docket entry.

district on 20 October 2010.  Plaintiff commenced the current action on 25 July 2011.  In this

action, he asserts claims against the County under Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e *et seq*.; the Americans with Disabilities Act of 1990 ("ADA"),

42 U.S.C. § 12101 *et seq*.; and the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621 *et seq*.  Plaintiff also appears to be asserting numerous state law claims against the

County, including but not limited to "fraud, slander, defamation, conspiracy, collusion,

misconduct, malice, and willful and wanton conduct . . . ."  (Compl., DE # 4, at 10.)

On 25 August 2011, the County filed a motion to dismiss the complaint.  Plaintiff filed a

response on 2 September 2011.  The County did not file a reply.

## II.  DISCUSSION

A.     <u>Failure to Exhaust Administrative Remedies</u>

The County first argues that plaintiff's complaint should be dismissed in its entirety for

lack of subject matter jurisdiction because plaintiff failed to exhaust his administrative remedies.

Before a plaintiff may file suit under Title VII, the ADA, or the ADEA, he is required to file a

charge of discrimination with the EEOC.  <u>See</u> 42 U.S.C. § 2000e-5; 29 U.S.C. § 626(d); 42

U.S.C. § 12117(a) (incorporating the "powers, remedies, and procedures" of Title VII, including

exhaustion requirement); <u>Jones v. Calvert Grp., Ltd.</u>, 551 F.3d 297, 300 (4th Cir. 2009); <u>Davis v.

Va. Commonwealth Univ.</u>, 180 F.3d 626, 628 n.3 (4th Cir. 1999).  "Th[is] exhaustion

requirement ensures that the employer is put on notice of the alleged violations so that the matter

can be resolved out of court if possible."  <u>Miles v. Dell, Inc.</u>, 429 F.3d 480, 491 (4th Cir. 2005).

Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a

discrimination claim deprives the federal courts of subject matter jurisdiction over the claim.

See <u>Jones</u>, 551 F.3d at 300.

The scope of a plaintiff's right to file a federal lawsuit under Title VII, the ADA, or the ADEA is determined by the contents of the EEOC charge. <u>Id.</u> Only those discrimination claims stated in the initial charge, those reasonably related to the initial charge, and those developed by reasonable investigation of the initial charge may be maintained in a subsequent civil action. <u>Id.;</u> <u>see also</u> <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 963 (4th Cir. 1996).

Here, the County argues that "plaintiff has made no effort to demonstrate that he has fulfilled the exhaustion prerequisite" because he "has not identified, by pleading or otherwise, the specific charges filed with the EEOC." (Def.'s Mem. Supp. Mot. Dismiss, DE # 12, at 6.) However, as the County admits (<u>see id.</u>), plaintiff has attached a right-to-sue letter to his complaint (<u>see</u> DE # 4-3). He has also alleged that he exhausted his administrative remedies. (Compl., DE # 4, at 5, 9, 11, 21.) In the court's view, at this stage of the proceedings, plaintiff has sufficiently demonstrated satisfaction of the procedural prerequisites for filing suit under the relevant statutes. <u>See</u> <u>Davis v. N.C. Dep't of Corr.</u>, 48 F.3d 134, 140 (4th Cir. 1995) ("We have long held that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint."). Thus, the court will not dismiss the complaint at this time for failure to exhaust administrative remedies. However, the County may raise the issue of subject matter jurisdiction again at the summary judgment stage, when both parties will have an opportunity to submit copies of any documents relating to the specific charges that plaintiff filed with the EEOC.

B.    <u>Title VII Race Claims</u>

In this case, plaintiff asserts claims under Title VII for "retaliatory discrimination,

harassment discrimination, [and] race and color discrimination." (Compl., DE # 4, at 10.) The County moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of a complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In order to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc., 591 F.3d 250, 255 (4th Cir. 2009). A court need not accept as true "'unwarranted inferences, unreasonable conclusions, or arguments.'" Id. (quoting Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009), cert. denied, 130 S. Ct. 1140 (2010)).

Plaintiff is proceeding *pro se*. Pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by attorneys. See Haines v. Kerner, 404 U.S. 519, 520 (1972). This court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. See id.; Noble v. Barnett, 24 F.3d 582, 587 n.6 (4th Cir. 1994); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978).

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . .

4

discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a). Absent direct evidence, the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. See Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (applying these elements in the Rule 12(b)(6) context), cert. granted, 131 S. Ct. 3059 (U.S. June 27, 2011) (No. 10-1016); White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

The County argues that plaintiff's race discrimination claim should be dismissed because plaintiff "has not pled that his job performance was satisfactory." (Def.'s Mem. Supp. Mot. Dismiss, DE # 12, at 7.) As previously stated, the court has a duty to construe *pro se* complaints liberally. It is true that plaintiff does not intone the magic words "my job performance was satisfactory" in the complaint. But he need not, as long as satisfactory job performance can be inferred from the allegations that he does make. See Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (all reasonable factual inferences from the allegations in the complaint must be drawn in the plaintiff's favor). Here, plaintiff alleges that he was given an "unsubstantiated" poor performance appraisal. (Compl., DE # 4, at 13, 14.) Plaintiff also alleges that the County discharged him for "unsubstantiated" charges of insubordination, misconduct, and unacceptable personal conduct. (Id. at 18; see also id. at 8 ("Plaintiff was discharged, without just cause, for insubordination, misconduct, and unacceptable personal conduct," and "[p]laintiff was labeled, 'angry, violent, frustrated, and emotional,' without just cause").) Taken together, these allegations support the inference that plaintiff is disputing the County's proffered

5

reasons for terminating him and that plaintiff was performing his job in a satisfactory manner at all times relevant to this action. Thus, the court finds the County's argument with respect to this issue to be without merit.

The County also argues that plaintiff alleges no facts to demonstrate that he was treated differently than similarly situated employees outside his protected class. The court rejects this contention and finds that the County has ignored several of plaintiff's allegations relating to disparate treatment. Plaintiff, who is African-American, asserts that he was discriminated against on the basis of his race in the assignment of job responsibilities.[2] Specifically, he maintains that he was "excluded" from "FAMPO/Section planning work." (Compl., DE # 4, at 13; see also id. at 8 (plaintiff was given a "departmental" project, but not a "section" project).) He also expressly names other employees outside of the protected class who were "treated favorably" by his supervisor, Mr. Richard Heickson ("Heickson"). (Id. at 13.) Among other things, plaintiff alleges that these employees were assigned "a steady supply of professional FAMPO/Section planning work" and that they were allowed "to attend regularly scheduled meetings and speak publicly." (Id.) Although these allegations are minimal, they are sufficient to demonstrate that plaintiff was treated differently from similarly situated employees outside the protected class. As a result, plaintiff will be permitted to proceed with his race discrimination claim.

Plaintiff also appears to allege that the County subjected him to a hostile work

---

[2] The court notes that it is possible for the reassignment of job duties to constitute an adverse employment action "if the plaintiff can show that the reassignment had some significant detrimental effect" such as a "decrease in compensation, job title, level of responsibility, or opportunity for promotion[.]" James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted); see also Webster v. Rumsfeld, 156 Fed. Appx. 571, 579 (4th Cir. 2005). In this case, plaintiff has set forth sufficient allegations regarding the significant change in his level of responsibility to survive the motion to dismiss.

environment based on his race. (See Compl., DE # 4, at 10.) To establish such a claim, plaintiff must demonstrate that: (1) he was subjected to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) some factual basis exists to impute liability for the harassment to the employer. See, e.g., Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 612 (E.D.N.C. 2006).

With respect to the first element of this claim, plaintiff appears to rely in part on the same allegations that he makes with respect to his disparate treatment claim, see discussion, supra, at 6. In other words, he claims that he was subjected to unwelcome harassment in part because he was excluded from FAMPO projects. However, "alleged acts of disparate treatment cannot be transformed, without more, into a hostile work environment claim." Kilby-Robb v. Spellings, 522 F. Supp. 2d 148, 164 (D.D.C. 2007), aff'd, 309 Fed. Appx. 422 (D.C. Cir. 2009); see also Lester v. Natsios, 290 F. Supp. 2d 11, 32-33 (D.D.C. 2003); Parker v. State, Dep't of Pub. Safety, 11 F. Supp. 2d 467, 475 (D. Del. 1998) ("[T]he dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address.").

Plaintiff further appears to rely on several incidents that are unconnected to his disparate treatment claim. First, he alleges that his supervisor, Heicksen, gave him an unsubstantiated poor performance evaluation on 31 July 2009. (Compl., DE # 4, at 13.) He also alleges that he

was "bullied" by the County's Planning and Inspections Department Director, Tomas Lloyd

("Lloyd"), who falsely accused him of sexual harassment and workplace violence. (Id. at 14.)

In addition, on 2 March 2010, a few days prior to plaintiff's termination, Assistant County

Manager and Human Resources Manager James Lawson ("Lawson") allegedly labeled plaintiff

as "'violent, angry, emotional, and frustrated'" in front of Lawson's two assistants. (Id. at 16.)

Finally, on 3 March 2010, plaintiff received a letter from County Manager James Martin

("Martin") which stated that plaintiff was "'experiencing frustration'" and that plaintiff "'may

react with violence.'" (Id. at 17.)

 While plaintiff's allegations that he was falsely accused of sexual harassment and

workplace violence are serious, he fails to allege any facts that would plausibly suggest the

necessary connection between the events he finds abusive and his membership in a protected

class. See Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 772 (4th Cir. 1997) ("We have made

clear that only harassment that occurs because of the victim's [protected status] is actionable. . . .

We have further explained that '[a]n employee is harassed or otherwise discriminated against

'because of' his or her [status] if, 'but-for' the employee's [status], he or she would not have

been the victim of the discrimination.'" (citation omitted)).  Here, plaintiff pleads his own race as

well as the race of his supervisors and coworkers, without any suggestion of how he was

discriminated against because of his protected status as opposed to any other, non-discriminatory

reason.  The plausibility of a nexus linking the alleged abusive events to his race is especially

weak given the fact that one of the incidents plaintiff relies on involves treatment he received

from Lawson, who is also African-American.  (See Compl., DE # 4, at 3, 12.)  As a result,

plaintiff's Title VII hostile work environment claim will be dismissed.

Plaintiff also asserts a Title VII race retaliation claim with respect to the events leading up to and including the termination of his employment. Title VII's prohibition on retaliation states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). The elements of a *prima facie* retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. Coleman, 626 F.3d at 190 (applying these elements in the Rule 12(b)(6) context); Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004); McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991).

The County appears to concede that the first two elements of this claim have been satisfactorily pled. (See Def.'s Mem. Supp. Mot. Dismiss, DE # 12, at 8-9.) The County argues that plaintiff has failed to make sufficient allegations regarding the third element of his *prima facie* case, that is, to allege adequate facts to demonstrate a causal connection between his discharge and the protected expression. Because of this deficiency, the County maintains that plaintiff's retaliation claim should be dismissed for failure to state a claim upon which relief may be granted. However, "under Fourth Circuit law, very little proof is required to establish the causal link in a retaliation case; in fact, in many instances, the connection is inferred from the mere act of termination . . . ." Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d 617, 627 (M.D.N.C. 2002); see also McNairn, 929 F.2d at 980 (stating, in reference to the causal connection element of a retaliation case, that "it can be inferred that the termination was

triggered by the [protected activity]"); <u>Karpel v. Inova Health Sys. Servs.</u>, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Although Karpel presents little or no direct evidence of a causal connection between her protected activity and Inova's adverse action, little is required.").

The essence of the arguments made by the County with respect to this issue is that the County had a legitimate, non-discriminatory reason for discharging plaintiff. (<u>See</u> Def.'s Mem. Supp. Mot. Dismiss, DE # 12, at 8-9.) While this may be the appropriate analysis at the summary judgment stage of the litigation, the purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve contests surrounding the facts or to decide the merits. <u>Republican Party</u>, 980 F.2d at 952.

Furthermore, the court disagrees with the County's assertion that plaintiff's own allegations substantiate the lack of a causal link. It is apparent that plaintiff details the County's interpretation of certain relevant events in his complaint not because he agrees with the County's position, but because he intends to show that the County's proffered reasons for terminating him were pretext for retaliation. At a minimum, plaintiff clearly pleads that he complained about racial discrimination in a detailed email to his immediate supervisor on 6 January 2010 (Compl., DE # 4, at 8), that he filed a complaint with the EEOC on 26 January 2010 (<u>id.</u>), and that he "was hurriedly discharged for misconduct" on 12 March 2010 (<u>id.</u> at 9). The temporal proximity of these events is sufficient to demonstrate a causal connection between the protected activity and the adverse action. <u>See</u> <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998) ("This Court has held that evidence that the alleged adverse action occurred <u>shortly</u> after the employer became aware of the protected activity is sufficient to 'satisf[y] the less onerous burden of making a prima facie case of causa[tion].'" (citation omitted) (emphasis

and alterations in original)). At the Rule 12(b)(6) stage, the court finds that plaintiff has pled

"factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Accordingly, plaintiff will be allowed to

proceed with his Title VII race retaliation claim.

C.    ADA Claims

        The court construes plaintiff's complaint as attempting to raise several claims under the

ADA. The court will first address plaintiff's discrimination and hostile work environment

claims. The ADA provides in relevant part:

> No covered entity shall discriminate against a qualified individual on the basis of
> disability in regard to job application procedures, the hiring, advancement, or
> discharge of employees, employee compensation, job training, and other terms,
> conditions, and privileges of employment.

42 U.S.C. § 12112(a). To avail himself of the protections of the ADA, plaintiff must first

demonstrate that he suffers from a disability. See id.; Fox v. Gen. Motors Corp., 247 F.3d 169,

177 (4th Cir. 2001) (setting out *prima facie* elements of ADA hostile work environment claim);

EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000) (setting out *prima facie*

elements of ADA disability discrimination claim); Williams v. Brunswick Cnty. Bd. of Educ.,

725 F. Supp. 2d 538, 543 (E.D.N.C. 2010) (same), aff'd, — F.3d —, No. 10-1884, 2011 WL

2938073 (4th Cir. July 22, 2011). The ADA defines "disability" with respect to an individual as

"(A) a physical or mental impairment that substantially limits one or more major life activities of

such individual; (B) a record of such an impairment; or (C) being regarded as having such an

impairment . . . . " 42 U.S.C. § 12102(1).[3]  In this case, it is unclear whether plaintiff is claiming

---

[3] The current version of the ADA incorporates the ADA Amendments Act of 2008 ("ADAAA"), Pub. L.
No. 110–325, 122 Stat. 3553 (2008). The ADAAA, which became effective on 1 January 2009, id. at 3559, applies
to this case. In the ADAAA, Congress mandated that the definition of disability is to be construed "in favor of broad

that he has an actual disability or that the County perceived him as being disabled.  As a result, the court will consider both possible claims.

The only allegation that the court could find in plaintiff's complaint relating to an actual disability is that plaintiff "is a Black male who happens to stutter."  (Compl., DE # 4, at 12.)  Even if the court assumes that plaintiff's stuttering is a "physical impairment" under 42 U.S.C. § 12102(1)(A), the complaint contains no allegations which demonstrate that plaintiff's stutter substantially limited any major life activity, such as working or communicating.  See Bates v. Wis.-Dep't of Workforce Dev., 636 F. Supp. 2d 797, 809 (W.D. Wis. 2009) (speech impediment which allegedly caused plaintiff to stutter did not qualify as disability under the ADA, given complete lack of evidence that plaintiff's stuttering substantially limited any major life activity), aff'd, 375 Fed. Appx. 633 (7th Cir. 2010).  In fact, plaintiff's own allegations indicate that his physical condition did not limit his ability to work or communicate.  (See, e.g., Compl., DE # 4, at 12 (plaintiff states that he is "highly-experienced and highly-educated").)  Thus, plaintiff has alleged no facts from which the court can conclude that he has the requisite disability to qualify him for relief under 42 U.S.C. § 12102(1)(A).

The court will now consider whether plaintiff has alleged sufficient facts to show that he was "regarded as" having a disability.  42 U.S.C. § 12102(1)(C).  "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to

---

coverage of individuals . . . to the maximum extent permitted" by the law.  42 U.S.C. § 12102(4)(A).  The court has taken the broad coverage of the ADAAA into account in ruling on the motion to dismiss.

limit a major life activity." 42 U.S.C. § 12102(3)(A). Here, the only allegation that the court could find relating to this issue is that on 5 March 2010, County Manager Martin, "wrote about Mr. Bess' disability." (Compl., DE # 4, at 15.) Other than this vague allegation, there are simply no facts in the complaint which show that any of the relevant decision makers in this case regarded plaintiff as having an actual or perceived impairment or that any of the decision makers subjected him to action that is unlawful under the ADA because of such an impairment. As a result, plaintiff cannot establish that a disability existed under 42 U.S.C. § 12102(1)(C). Accordingly, even under the most liberal pleading standard, plaintiff has failed to state a discrimination or hostile work environment claim under the ADA.[4]

The court also construes plaintiff's complaint as attempting to raise a retaliation claim under the ADA. "Title V of the ADA governs claims for retaliation." <u>Shepard v. Irving</u>, 77 Fed. Appx. 615, 622 (4th Cir. 2003). Title V states in pertinent part:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). By its plain language, this provision of the ADA does not require that the claimant be disabled. <u>Rhoads v. FDIC</u>, 257 F.3d 373, 391 (4th Cir. 2001). In order to establish a *prima facie* case of retaliation, a plaintiff must allege (1) that he engaged in conduct protected by the ADA; (2) that he suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action.

---

[4] To the extent that plaintiff is attempting to assert a claim for wrongful discharge under the ADA, this claim fails for the same reasons as plaintiff's ADA discrimination and hostile work environment claims. <u>See</u>, <u>e.g.</u>, <u>Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.</u>, 53 F.3d 55, 58 (4th Cir. 1995) (setting out *prima facie* elements of ADA wrongful discharge claim).

13

Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002) (applying these elements in the Rule 12(b)(6) context); Rhoads, 257 F.3d at 392.

Here, similar to his race retaliation claim, plaintiff clearly pleads that he complained about "disability discrimination" in a detailed email to his immediate supervisor on 6 January 2010 (Compl., DE # 4, at 8), that he filed a complaint with the EEOC on 26 January 2010 (id.), and that he "was hurriedly discharged for misconduct" on 12 March 2010 (id. at 9). The temporal proximity of these events is sufficient to demonstrate a causal connection between the protected activity and the adverse action. See Dowe, 145 F.3d at 657. Thus, plaintiff will be permitted to proceed with his ADA retaliation claim.

D.      ADEA Claim

Plaintiff also brings an age discrimination claim against the County. The ADEA provides that "all personnel actions affecting [certain federal] employees . . . who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Here, plaintiff's ADEA claim fails to meet the requisite pleading and plausibility requirements set forth in Twombly, 550 U.S. 544, and Iqbal, 129 S. Ct. 1937. Although plaintiff alleges that his job responsibilities were reassigned to other employees, some of whom are under 30 years of age and some of whom are over 40 years of age (Compl., DE # 4, at 13), he completely fails to make any allegations regarding his age or a birth date from which his age may be determined. Thus, the court agrees with the County's argument that plaintiff has not pled "any facts to establish that he is within the class of employees protected by the ADEA." (Def.'s Mem. Supp. Mot. Dismiss, DE # 12, at 10.) As a result, plaintiff has failed to state an ADEA claim.

E.      State Law Claims

14

It appears that plaintiff is attempting to bring broad state law claims against the County for "fraud, slander, defamation, conspiracy, collusion, misconduct, malice, and willful and wanton conduct . . . ." (Compl., DE # 4, at 10.) Plaintiff also appears to assert state law claims for other "misconduct," including unlawful employment practices, calumny, interference with state agency administration, and interference with state judicial administration. (Id. at 2.) However, with the exception of two possible incidents that will be discussed below, plaintiff fails to allege any specific facts in support of these claims. Rather, he merely makes conclusory allegations accusing County officials and employees of various types of misconduct. Thus, almost all of plaintiff's state law claims fall far short of the plausibility standard required by Twombly, 550 U.S. 544, and Iqbal, 129 S. Ct. 1937.

Construing the complaint liberally, plaintiff appears to claim that he was defamed on 2 March 2010 when Lawson labeled him as being "'violent, angry, emotional, and frustrated'" (Compl., DE # 4, at 16) and that he was also defamed in a letter written to him by Martin on 3 March 2010. Martin's letter, which was composed in response to a written complaint from plaintiff dated 1 March 2010, stated that plaintiff's complaint gave rise to the concern that plaintiff was "experiencing frustration and may react with violence." (Id. at 17.)

"The term defamation includes two distinct torts, libel and slander. In general, libel is written while slander is oral." Tallent v. Blake, 291 S.E.2d 336, 338 (N.C. Ct. App. 1982). "To be actionable, a defamatory statement must be false and must be communicated to a person or persons other than the person defamed." Andrews v. Elliot, 426 S.E.2d 430, 432 (N.C. Ct. App. 1993). Here, plaintiff makes no allegation that Martin's 3 March 2010 letter was communicated to anyone other than plaintiff. Although plaintiff alleges that the letter was "hand-delivered by

Mr. Lloyd" (Compl., DE # 4, at 17), there is no allegation that Lloyd actually read the letter, nor can the court infer that Lloyd read the letter based on the mere fact that he delivered it to plaintiff. As a result, the 3 March 2010 letter cannot be used to support a claim for defamation in this case.

The second statement that plaintiff sets forth in support of a defamation claim is that Lawson labeled him as being "'violent, angry, emotional, and frustrated.'" (Compl., DE # 4, at 16.) Lawson's statement was communicated to someone other than plaintiff, as evidenced by plaintiff's allegation that the statement was made in front of Lawson's two assistants. (Id.) The North Carolina courts recognize two actionable classes of oral defamation: *slander per se* and *slander per quod*. Specifically, *slander per se* is "'an oral communication to a third party which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease.'" Losing v. Food Lion, LLC, 648 S.E.2d 261, 263 (N.C. Ct. App. 2007) (quoting Boyce & Isley, PLLC v. Cooper, 568 S.E.2d 893, 898 (N.C. Ct. App. 2002)).

The allegations in plaintiff's complaint fail to support a claim of *slander per se*. Although Lawson labeled plaintiff as being "violent," plaintiff does not allege that Lawson accused him of any crime at all, let alone one of moral turpitude. See, e.g., Dew v. State ex rel. N.C. Dep't of Motor Vehicles, 488 S.E.2d 836, 837 (N.C. Ct. App. 1997) (crimes involving moral turpitude include "act[s] of baseness, vileness, or depravity in the private and social duties that a man owes to his fellowman or to society in general") (alteration in original) (internal quotation marks and citation omitted)); Williams v. Rutherford Freight Lines, 179 S.E.2d 319,

323 (N.C. Ct. App. 1971) ("[I]in order to be actionable *per se* a false statement must impute that a person is guilty of a punishable offense.").  Similarly, there is no allegation that Lawson stated or even implied that plaintiff had an infectious disease.

Furthermore, there are no allegations in the complaint that plaintiff was impeached in his trade, business, or profession.  See Badame v. Lampke, 89 S.E.2d 466, 468 (N.C. 1955) (In order for defamatory statements to fall into this category, the statements "must touch the plaintiff in his special trade or occupation, and . . . must contain an imputation necessarily hurtful in its effect on his business. . . . To be actionable *per se*, they must be uttered of him in his business relation.").  Rather, Lawson's statement about plaintiff is properly characterized as a "general reflection upon the plaintiff's character or qualities" and therefore is not actionable *per se*. Williams, 179 S.E.2d at 323 (citation and internal quotation marks omitted).

*Slander per quod* is a spoken statement that is not defamatory on its face but with "'extrinsic, explanatory facts'" causes injury.  Donovan v. Fiumara, 442 S.E.2d 572, 574 (N.C. Ct. App. 1994) (quoting Badame, 89 S.E.2d at 467).  "In such cases, 'the injurious character of the words and some special damage must be pleaded and proved.'"  Id. at 575 (quoting Beane v. Weiman Co., 168 S.E.2d 236, 238 (N.C. Ct. App. 1969)); see also Stanford v. Owens, 265 S.E.2d 617, 624 (N.C. Ct. App. 1980) ("[S]pecial damages must be pleaded with sufficient particularity to put defendant on notice.").  In the context of defamation, it is insufficient to allege emotional or mental distress to prove special damages – there must be showing of "'pecuniary loss.'"  Donovan, 442 S.E.2d at 575 (quoting Williams, 179 S.E.2d at 322).

Plaintiff fails to state a claim for *slander per quod*, as he makes no allegation that he has suffered pecuniary loss as a result of Lawson's statement other than general allegations that he

should be compensated for "loss of savings" and "financial injuries." (Compl., DE # 4, at 22.) Such broad allegations, which are contained in plaintiff's prayer for relief and therefore are not made in reference to any particular claim, are insufficient to sustain a claim for *slander per quod*.

Accordingly, the court will dismiss all of plaintiff's state law claims against the County for failure to state a claim upon which relief can be granted.

F.     Consolidation of Plaintiff's Cases

As previously mentioned, plaintiff has filed another action in this district relating to his charges of discrimination, Bess v. County of Cumberland et al., No. 5:10-CV-453-BR. Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ." Fed. R. Civ. P. 42(a)(2). While neither of the parties to this action have requested consolidation, "[d]istrict courts have the inherent authority to order consolidation *sua sponte*." Plimpton v. Cooper, 141 F. Supp. 2d 573, 575 (W.D.N.C.) (citing Pickle v. Char Lee Seafood, Inc., 174 F.3d 444 (4th Cir. 1999) (acknowledging authority although determining inappropriate under the facts), aff'd, 21 Fed. Appx. 159 (4th Cir. 2001). Furthermore, "district courts have broad discretion under [Rule] 42(a) to consolidate causes pending in the same district." A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Co., 559 F.2d 928, 933 (4th Cir. 1977). When exercising this discretion, district courts should "weigh the risk of prejudice and possible confusion versus the possibility of inconsistent adjudication of common factual and legal issues, the burden on the parties, witnesses, and judicial resources by multiple lawsuits, the length of time required to try multiple suits versus a single suit, and the relative expense required for multiple suits versus a single suit." In re Cree, Inc., Sec. Litig., 219 F.R.D. 369, 371 (M.D.N.C. 2003) (citing Arnold v.

Eastern Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982)).

Here, the two cases in question clearly involve the same facts and common questions of law. The discrimination and retaliation claims alleged in both suits essentially arise from the same series of events and were perpetrated by the same individuals. See Harris v. L & L Wings, Inc., 132 F.3d 978, 981 n.2 (4th Cir. 1997) (where plaintiffs' claims were "brought against the same defendant, relying on the same witnesses, alleging the same misconduct," the standard for consolidation under Federal Rule of Civil Procedure 42(a) was "clearly" met). While there may be some slight differences in the claims and requests for relief in each case, there is no reason to expect that consolidation will result in any confusion, undue delay, or prejudice for either plaintiff or the County. Moreover, it is plain that consolidation serves the interests of judicial economy and will avoid the possibility of inconsistent rulings or judgments. Therefore, this case will be consolidated with No. 5:10-CV-453-BR.

The traditional rule, in place before Federal Rule of Civil Procedure 42(a) was adopted, provided that "consolidation . . . does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933). The language of Federal Rule of Procedure 42(a) apparently permits consolidation either to merge the cases or to retain the separate character of the cases. The majority of courts subscribe to the traditional rule. See Schnabel v. Lui, 302 F.3d 1023, 1035 (9th Cir. 2002); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2382 (3d ed. 2008). In this instance, the court will follow the traditional rule. If ultimately necessary, both cases will be tried together, but each suit will retain its separate character and separate judgments will be entered. Plaintiff's first-filed case, No. 5:10-

CV-453-BR, will serve as the lead case.

Because the court is consolidating plaintiff's cases, the court is *sua sponte* reconsidering the order that it previously issued on the motion to dismiss filed by the County and the individual defendants in the lead case. See Bess v. County of Cumberland et al., No. 5:10-CV-453-BR, 7/25/11 Order, DE # 18. The court is reconsidering the motion to dismiss only as it relates to plaintiff's state law claims against the County and the individual defendants. The court originally denied the motion to dismiss the state law claims because the County and the individual defendants focused exclusively on the issue of whether the court should exercise supplemental jurisdiction over the state law claims. See id., slip. op. at 16-17. Now, for the same reasons that the court is dismissing the state law claims against the County in this action, see Section II.E., supra, the court concludes that plaintiff cannot maintain any of his state law claims against the County or the individual defendants in the lead case. As a result, the court will dismiss plaintiff's state law claims in the lead case. See 28 U.S.C. § 1915(e)(2)(B)(ii) (the *in forma pauperis* statute, which plaintiff is proceeding under, requires a district court to dismiss a case if, at any time, it finds that the action fails to state a claim on which relief may be granted). The individual defendants in the lead case will also be dismissed, as the state law claims were the only claims remaining against those defendants.

### III. CONCLUSION

For the foregoing reasons, the County's motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's Title VII hostile work environment claim, ADA discrimination claim, ADA hostile work environment claim, ADEA claim, and all of his state law claims are DISMISSED. Because the court is consolidating plaintiff's cases, the Clerk is DIRECTED

to adminstratively close the file with respect to the second-filed action docketed as No. 5:11-CV-388-BR. However, the complaint filed in the second action, No. 5:11-CV-388-BR, shall be docketed in the first matter, No. 5:10-CV-453-BR, as a supplemental complaint. The allegations contained in the supplemental complaint are hereby INCORPORATED into the lead case's complaint, No. 5:10-CV-453-BR, DE # 5.

The Clerk is also DIRECTED to file this order in the lead case. The state law claims in the lead case are hereby DISMISSED. The individual defendants, James Martin, James Lawson, Tomas Lloyd, and Richard Heickson are also DISMISSED from the lead case.

All future filings shall be filed under the lead case, No. 5:10-CV-453-BR. The parties shall make no further filings in the second-filed action, No. 5-11-CV-388, unless directed to do so by the court. Going forward, the only surviving claims are plaintiff's claims against the County for race discrimination (*i.e.*, disparate treatment) under Title VII, race retaliation under Title VII, and disability retaliation under the ADA.

This 10 October 2011.

_____

W. Earl Britt
Senior U.S. District Judge